Authentisign ID: 48A92C14-E5BE-EE11-B660-6045BDD68161



# PURCHASE AGREEMENT

26817 W 7 MILE Road, Redford Twp, Michigan 48240

| CONTACT INFORMATION ||
|---|---|
| "Seller" | "Buyer" |
| Name(s): Aaron Grable | Name(s): Creative Audio Solutions LLC |
| Street Address: 7652 Pioneer Drive | Street Address: 400 Renaissance Center, Suite 2600 |
| City, State, Zip: Ypsilanti, Michigan, 48197 | City, State, Zip: Detroit, Michigan, 48243 |
| Email Address: | Email Address: rbrown@casdetroit.com |
| Phone: | Phone: (855) 560-8080 |
| Facsimile: | Facsimile: |
| "Listing Broker" | "Buying Broker" |
| Agent: Marc P Johnson | Agent: James Simmons |
| Company: Johnson Realty Group, LLC | Company: O'Connor Realty Detroit, LLC |
| Email Address: mjohnson@jrgrealestate.com | Email Address: james@oconnordetroit.com |
| Phone: (313) 874-0400 | Phone: (313) 334-1021 |
| Facsimile: | Facsimile: |



Authentisign ID: 48A92C14-E5BE-EE11-B660-6045BDD68161

1.  **OFFER TO PURCHASE** Effective as of January   29th   , 20_24_ , Buyer hereby offers to purchase the Property (as defined below) from Seller upon the terms and conditions set forth in this Residential Purchase Agreement (this "Agreement"). If not rescinded by Buyer or accepted by Seller in writing, this offer will expire on at 11:59 p.m. (Eastern Time) on  February   1st   , 2024 .

2.  **ACCEPTANCE OF OFFER / EFFECTIVE DATE**. Effective as of _____, 20___ (the "Effective Date"), Seller hereby accepts Buyer's offer to Purchase the Property on the terms and conditions set forth in this Agreement. All time periods contained herein (other than the period set forth in Section 1 above), including contingency periods for which a date certain has not been provided, will be calculated such that the day after the Effective Date is the first day of such period. Any time period that terminates on a weekend or national holiday shall automatically be extended until the next business day.

3.  **PROPERTY DESCRIPTION** (the "Property")
    A.  **Common Address**:

    ❏ Residential ❏ Condominium ❏ Multi-Family ☒ Commercial/Industrial ❏ Vacant Property *[Select One]*

    26817 W 7 Mile Road

    Redford Township

    Wayne county,            Michigan,            48240

    B.  **Legal Description**:
        07D585A 586A 587A LOTS 585 586 AND 587 EXCEPT THE N 7 FT THEREOF SMITHS LINCOLN PARK NO 1 SUB T1S R10E L51 P11 WCR

    C.  **Year Built**: 1947

    D.  **Tax Parcel Identification Number**: 79008020585001

    E.  **Fixtures and Personal Property**:

        The Property will be sold together with all improvements and appurtenances, if any, now in or on the premises, including all built-in appliances and equipment, shelving, cabinets, lighting fixtures, ceiling fans, attached carpeting, window treatments and hardware, curtain rods, attached mirrors, ventilating fixtures, telephone system and instruments designed for the system, central vacuum and attachments, water softeners, security/alarm system (if owned), fireplace inserts, doors, screens, gas logs, grates, gas attachments and equipment, attached humidifiers, fire suppression system (if any), mailboxes, fences, television antennae, satellite dishes (if owned) and complete rotor equipment, generators, storm doors and windows, screens, awnings, garage door openers and transmitters, all landscaping, irrigation systems, fuel in tanks, septic system (if any), water pumps and softening systems, docks, and *[list additional fixtures / personal property included with sale]*:

        **BUT, SPECIFICALLY EXCLUDING THE FOLLOWING** *[list items that are excluded from sale]*:

        All personal property will be conveyed at the closing by a quit-claim bill of sale in form and substance reasonably satisfactory to the parties hereto.
2122 Michigan Avenue • Detroit, Michigan 48216 • (p) 313-963-9891 • (f) 313-963-9892 • info@oconnordetroit.com


Buyer Initials _____ Seller Initials _____

22-46615-mar    Doc 50-2    Filed 03/05/24    Entered 03/05/24 12:03:50    Page 2 of 11

4. **PURCHASE PRICE** The purchase price for the property is $ 135,000.00

   **EARNEST MONEY DEPOSIT** Together with this offer, Buyer deposits $ 2,000.00         , to be held by O'Connor Realty Detroit, LLC                    ("Escrowee") evidencing Buyer's good faith. Upon expiration of the Inspection Contingency (as defined below), Buyer will deposit an additional $ 0.00 with Escrowee, making the total deposit $2,000.00         . The deposit shall be applied to the purchase price at closing or otherwise disbursed in accordance with the terms of this Agreement.

   If (a) this offer is not accepted by Seller or, (b) this offer is accepted by Seller and Seller is thereafter unable or unwilling to perform its obligations under this Agreement and such inability or unwillingness results in the transaction contemplated hereby failing to close, or (c) if a condition precedent to Buyer's obligation to purchase the Property under the terms of this Agreement is not satisfied or waived by Buyer, then the deposit shall be promptly refunded to Buyer and this Agreement shall automatically terminate. If Buyer defaults in the performance of its obligations under this Agreement and Seller does not elect to waive such default, then Seller may elect to retain the deposit and terminate this Agreement. In the event Buyer and Seller both claim the deposit, it shall remain in Escrowee's trust account until a court action has determined to whom the deposit must be paid, or until the Buyer and Seller have agreed in writing to the disposition of the deposit.

5. **METHOD OF PAYMENT** All payments must be in the form of cash, certified check, cashiers check, or money order, or as otherwise required by the title company conducting the closing, if applicable. The purchase will be completed by the following method upon Seller's delivery of a warranty deed conveying marketable title to the Property *[Select all that apply]*.

   ☐ CASH

   ☒ NEW MORTGAGE This Agreement is contingent on Buyer's ability to obtain a new mortgage loan in the amount of $ 135,000.00          on April     the 1st       following SBA 7A    terms: _____.
   Buyer will provide evidence of mortgage application from Buyer's lender within 5 days of the date of the Effective Date. If Buyer is unable to deliver to Seller evidence of the mortgage loan approval before 4/1  , 2024 , Buyer may cancel this Agreement by providing written notice to Seller, whereupon the deposit will be immediately released to Buyer. If Buyer fails to terminate as provided in the immediately preceding sentence, the financing contingency contained herein shall be deemed satisfied regardless of whether Buyer has secured such financing.

   ☐ LAND CONTRACT Buyer will purchase the Property on land contract with a $            down payment and monthly installments of principal and interest in the amount of $              or more, including annual interest of _____ percent ( ___%) of the outstanding principal balance. Buyer will pay the entire balance in one lump sum, on or prior to _____.

   ☐ MORTGAGE ASSUMPTION or LAND CONTRACT ASSIGNMENT: If the holder of the mortgage or land contract agrees, Buyer will assume and pay Seller's existing mortgage or land contract according to its terms. Buyer will pay the difference between the purchase price and the existing balance of such mortgage loan or land contract, which as of the Effective Date is approximately $            , upon Seller's delivery of a warranty deed or a land contract assignment. Buyer will reimburse Seller at closing for any funds held in escrow by the mortgage lender or land contract vendor which are not otherwise refunded to Seller.

6.  **6. TITLE INSURANCE** (a) Seller shall provide to Buyer, at Seller's expense, an owner's policy of title insurance without standard exceptions (other than the so-called "survey exception", unless a survey which is sufficient to cause the title company to remove such survey exception is supplied to the title company pursuant to subsection (b) below) in the amount of the purchase price. Seller will apply for a commitment for title insurance within three (3) days after the Effective Date. Any special exception will be subject to Buyer's approval, provided that this contingency shall be deemed waived unless Buyer notifies Seller in writing within two (2) days of receipt of the commitment. Seller will have 30 days after receiving written notice to remedy any claimed defect, but shall be under no obligation to do so. Should Seller fail to remedy or elect not to remedy any such defect raised by Seller in writing pursuant to the immediately foregoing sentence, Buyer shall have the right to terminate this Agreement and receive a refund of the deposit. Notwithstanding the foregoing, in no event shall Buyer be permitted to object to the following title encumbrances: building and use restrictions, easements and rights of way of record, special assessments and property taxes not yet due and payable. Additionally, unless Buyer specifically elects to assume or otherwise consents to the existence of the following, in no case shall any mortgage or other liquidated encumbrance that can be released by the payment of money be deemed a permitted encumbrance on the Property and Seller shall be obligated to cause the same to be satisfied and removed of record on or prior to the closing. (b) If this box [___] is checked, then Seller, at Seller's expense, is obligated to provide Buyer with a survey prior to the closing which is sufficient to cause the title company to remove the so-called "survey exception" from the title commitment and ultimate owner's policy of title insurance, and the removal of such exception is a condition to Buyer's obligation to close the transactions contemplated in this Agreement, the failure of which shall result in Buyer having the right to either (i) terminate this Agreement and receive a full refund of the earnest money deposit, or (ii) waive such condition and proceed to closing. If this box [X] is checked, then Seller has no obligation to provide a new survey to Buyer and the title commitment and the ultimate owner's policy of title insurance will be issued subject to the so-called "survey exception"; provided, however, that Buyer has the right to obtain, at its own expense, a survey of the Property which is sufficient to cause the the title company to remove the so-called "survey exception" from the title commitment and ultimate owner's policy of title insurance.

7.  **CASUALTY AND CONDEMNATION** Seller shall bear the risk of casualty and condemnation prior to closing, provided, however, that in the event of the destruction or condemnation of the Property or any part thereof that has a material impact on the use and/or value of the Property prior to closing, Buyer may elect to either (a) terminate this Agreement and receive a refund of the deposit, or (b) elect to proceed with the closing pursuant to the terms of this Agreement.

8.  **CLOSING COSTS** Seller shall pay all state and county transfer taxes, costs required to convey title as required under the terms of this Agreement and the cost of the owner's title insurance policy without standard exceptions. Buyer shall pay the cost of recording the deed and/or security interests, all mortgage closing costs and fees required in connection with the Buyer's loan, the issuance of the lender's title insurance policy and the cost of any due diligence, including obtaining a survey, if any.

9.  **BROKER COMMISSION** Seller shall pay the Listing Broker a commission pursuant to separate agreement, and Seller shall have no obligation to pay Buying Broker or any other third party any commission arising herefrom, and Buyer shall defend and hold Seller harmless from any claim for commission by any party other than Listing Broker. Notwithstanding the foregoing, Seller hereby advises Buyer that, if there is a Buying Broker, Seller's separate agreement with Listing Broker requires Listing Broker to pay Buying Broker either (i) one-half (1/2) of any commission actually paid by Seller to Listing Broker in connection with the sale of the Property under this Agreement, or (ii) such other amount as may have been publicly advertised by Listing Broker in connection with the marketing and sale of the Property.

10. **REAL ESTATE TAXES** All property taxes due and payable on or before date of closing shall be paid by Seller. Current taxes shall be prorated and adjusted as of date of closing in accordance with the due date of municipality or taxing unit(s) in which Property is located. Buyer acknowledges that Property taxes are subject to change.



Buyer Initials / Seller Initials

11. **SPECIAL ASSESSMENTS / HOMEOWNER ASSOCIATION FEES:** Seller shall discharge in full all installments of public authority charges confirmed by said municipality or taxing unit(s) (special assessments, water, sewer, paving charges, etc.) which are currently due and payable. Buyer is responsible for other assessments including, but not limited to, capital and lateral charges (assessed, but value not yet determined) which are confirmed and become due and payable after closing and installments of such public authority charges which are first due after closing. Current homeowner association dues, if any, shall be prorated to the date of closing. Any delinquent condominium/homeowner association dues/assessments/liens shall be paid by Seller at closing. Any and all dues/assessments/liens confirmed and becoming due and payable after closing will be paid by Buyer unless the parties agree otherwise in writing.

12. **SEWER AND WATER CHARGES** Seller agrees to pay for all sewer and water charges to the date of closing. The title company or Escrowee shall retain from amount due Seller at closing $500.00, or more if reasonably needed, for final water and sewer charges. After water and sewer bills are verified paid, any unused portion of such retained amount shall be returned to Seller.

13. **MISCELLANEOUS PRORATED ITEMS:** Rent, insurance (if assigned) and fuel, as well as interest on any existing land contract, mortgage or other lien assumed or to be paid by the Buyer, will be prorated to the date of closing.

    Additional items:

14. **CLOSING DATE:** The closing of the transaction contemplated in this Agreement shall closed on or before <u>April     1st           </u>, 20<u>24</u> in the offices of the Listing Broker, the title company or as otherwise agreed by the parties.

15. **OCCUPANCY:** Seller will deliver possession of the Property to Buyer:

    ☒   On the date of closing;

    ☐   On or prior to _____, 20___; or

    ☐   Subject to the rights of the tenants currently in possession of the Property.

    If Seller fails to deliver possession of the Property to Buyer on the date specified above, Seller will be obligated to pay Buyer an amount equal to $_____ per day for each day that Seller so fails. Seller shall be liable to Buyer for damage to the Property occurring after closing and before Seller's delivery of possession of the Property as required under this Agreement (to the extent not covered by insurance).

    If the date specified above is a date other than the date of closing, Seller shall pay Buyer, as consideration for Seller's retention of possession after the closing, either (a) ☐$_____ in one lump sum at closing, (b) ☐$_____ per month, payable on the first day of each month (with the first payment due on the date of closing and prorated based on the number of days remaining in the month of closing and the last payment prorated based on the number of days Seller occupies the Property in the last month of such occupancy), or (c) ☐$_____ payable as follows: _____.

    If possession of the Property is not delivered to Buyer on the date of closing (except with respect to tenants currently in possession of the Property), Seller will deposit $_____ with _____, which amount will be held in escrow and returned to Seller upon delivery of possession of the Property to Buyer; provided, however, that Buyer may draw on such escrowed sum to cover (i) the per diem charge set forth in the first sentence of this paragraph if Seller fails to pay the same, and (ii) any damages occurring at the Property from the date of closing until delivery of possession (Seller to remain liable to Buyer for the cost of any damage in excess of such escrowed amount).



Buyer Initials _____ / Seller Initials _____

16. **SELLER'S DISCLOSURE**:

    ☐ Buyer acknowledges that a Seller's Disclosure Statement has been provided to Buyer.

    ☐ Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer. Pursuant to the Seller Disclosure Act, MCL 559.951, *et seq.*, Buyer will have 72 hours after hand-delivery of the Seller's Disclosure Statement (or 120 hours after delivery by registered mail) to terminate this Agreement by delivery of a written notice to Seller or Seller's agent.

17. **LEAD-BASED PAINT DISCLOSURE/INSPECTION (For residential housing built prior to 1978 only)**
    Buyer acknowledges that prior to signing this Agreement, Buyer has received a copy of the *Lead-based Paint Sellers Disclosure Form* completed by the Seller on _____. 20___. The terms of which shall be part of this Agreement. Buyer also agrees (check one below):

    ☐ Buyer shall have _____ days after the date of this Agreement to conduct an inspection of the property for the presence of lead-based paint and/or lead-based paint hazards. (Federal regulations require a 10-day period or other mutually agreed upon period of time.) If Buyer is not satisfied with the results of this inspection, upon written notice from Buyer to Seller within this period, this Agreement shall terminate and the deposit shall be refunded to Buyer.

    ☐ Buyer hereby waives his/her opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

18. **LAND DIVISION ACT (For unplatted land only):** Seller and Buyer agree that the following statements shall be included in the deed at the time of delivery:

    (a) The grantor grants to the grantee the right to make _____ (insert "zero" or a specific number, as appropriate) division(s) under section 108 of the Land Division Act, MCL 560.108.

    (b) This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan right to farm act.

    **CAUTION:** If the space contained in subparagraph (a) above is left blank, the deed will NOT grant Buyer the right to any divisions.



19. **PROPERTY INSPECTIONS** *[Select one]*

    ❏ Buyer accepts the Property in its AS-IS, WHERE-IS present condition and agrees that there are no additional written or oral understandings except as otherwise provided in this Agreement.

    ❏ This Agreement is contingent upon satisfactory inspections of the Property, at Buyer's choice and at Buyer's expense, no later than _____ days after the Effective Date (the "Inspection Period"). These inspections may include, but may not be limited to, structural and/or mechanical inspections, survey and site investigation, soil borings, as well as inspections for radon, pests, mold and/or asbestos. Buyer agrees to return the Property to its prior condition after any inspections or tests. If Buyer is not satisfied with the results of any inspection, upon written notice from Buyer to Seller within the Inspection Period, this Agreement shall terminate and any deposit shall be refunded to Buyer. If Buyer does not terminate this Agreement prior to expiration of the Inspection Period, Buyer shall be deemed to have waived the inspection contingency. Buyer may propose amendments to this Agreement to Seller in writing during the Inspection Period; provided, however, such amendments shall have no force or effect unless accepted by Seller in writing during the Inspection Period.

    ☒ This Agreement is contingent upon satisfactory inspections of the Property, at Buyer's choice and at Buyer's expense, no later than <u>fifteen</u> (<u>15</u>) days after the Effective Date (the "Inspection Period"), pursuant to the terms of the ***Commercial Property Inspection Rider*** attached hereto and made part hereof.

    If the Property is a Condominium, see additional rights of Buyer and obligations of Seller contained in the ***All-Purpose Condominium Rider*** attached hereto and made part hereof.

20. **WALK-THROUGH**: Buyer has the right to walk through the property within forty-eight (48) hours prior to closing to confirm that the terms of this Agreement, including any amendment hereto, have been materially satisfied. In the event Buyer discovers that the Property is not in the condition required pursuant to the terms of this Agreement, Buyer shall so notify Seller in writing and the closing shall be delayed as needed, but not more than five (5) days, for the parties to mutually resolve such issues. If the parties cannot agree on a mutual resolution, then the default provisions of this Agreement shall govern.

21. **DEFAULT:** If Buyer defaults in the performance of its obligations under this Agreement, Seller may seek to enforce this Agreement, or may cancel this Agreement, keep the deposit, and pursue legal remedies. If Seller defaults, Buyer may seek to enforce this Agreement or may demand a refund of the deposit and pursue legal remedies.

22. **LIMITATION:** Buyer and Seller agree that any and all claims or lawsuits which they may have against the Listing Broker and its agents and/or Buying Broker and its agents relating to their services must be filed no more than six (6) months after the date of closing of the transaction described in this Agreement. Buyer and Seller waive any statute of limitations to the contrary.

23. **LEGAL FEES** In the event of any litigation relating to this Agreement, the prevailing party shall be entitled to recover from the losing party its actual costs and expenses of the litigation, including reasonable attorneys' fees actually incurred. This provision shall survive the expiration or termination of this Agreement.

24. **HEIRS AND SUCCESSORS** This contract binds Seller, Buyer, their personal representatives and heirs, and anyone succeeding to their interest in the Property. Buyer shall not assign this Agreement without Seller's prior written permission.

25. **SEVERABILITY** If any provisions of this Agreement shall be determined to be illegal or unenforceable, such determination shall not affect any other provisions of this Agreement, and all other provisions shall remain in full force and effect.



26. **AMENDMENT AND INTEGRATION** This Agreement cannot be modified except by a written instrument signed by the parties. This Agreement sets forth fully and completely the agreement between the parties in connection with this transaction, there are no written or oral agreements between the parties relating to this transaction that are not expressly set forth herein and this Agreement supersedes all prior oral or written agreements relating to this transaction.

27. **COUNTERPARTS** This Agreement may be signed in one or more counterparts, which together shall constitute one and the same instrument. Signatures shall be binding on the signer when delivered, regardless of whether delivery is in hard copy or by electronic means.

28. **GOVERNING LAW** This Agreement shall be governed and construed in accordance with the substantive and procedural laws of the State of Michigan without regard to conflict of law principles.

29. **HEADINGS** The titles and headings in this Agreement are provided as a matter of convenience only and shall not be understood to define, limit, construe, or describe the scope or intent of any provision of this Agreement.

30. **WAIVERS** A waiver by any party of a performance obligation or default under any provision of this Agreement shall not be deemed (i) a waiver of a further obligation or default under the same provision or (ii) a waiver of an obligation or default under any other provision.

31. **NOTICES** Any notice or other communication required or desired to be given hereunder shall be in writing and shall be deemed to have been sufficiently given for all purposes of this Agreement if (a) delivered personally, (b) sent by reputable national overnight courier, charges prepaid, (c) sent by registered or certified mail, postage and charges prepaid, or (d) sent by electronic mail, in each case addressed to the respective parties at the address of such party as set forth above. Any notice which is delivered by (i) reputable national overnight courier shall be deemed to be given one day after the date the same is delivered to such reputable national overnight courier, provided that such notice is sent for next business day delivery, (ii) mail shall be deemed to be given three days after the date sent, (iii) personal delivery shall be deemed to be given on the date of receipt or refusal to accept receipt, and (iv) electronic mail shall be deemed given on the date of posting. Any party may change its address for purposes of this Agreement, or add an additional party to which notices must be delivered, by giving the other party notice thereof in the manner hereinabove provided for the giving of notices.

32. **OTHER CONDITIONS**

Buyer to pay broker fee of four hundred ninety five dollars ($495.00) to JRG Real Estate.

[Signatures on Following Page]



Buyer Initials / Seller Initials

## SIGNATURE PAGE TO PURCHASE AGREEMENT FOR

_____
26817 W 7 Mile Road, Redford, Michigan, 48240

**BUYER'S SIGNATURE** Buyer hereby submits the foregoing offer to Seller on the terms and conditions contained herein:

Buyer Signature _Robert Brown_, President      Buyer Signature _Ryan Brown_ 01/29/24, Member

Print Name Creative Audio Solutions LLC        Print Name Creative Audio Solutions LLC

Deposit in the form of ☒ Personal Check ❑ Other _____ received by O'Connor Realty Detroit, LLC

Date __01/29/24__, 20___

**SELLER'S ACCEPTANCE** Seller hereby accepts the foregoing offer, subject to the amendments and/or addendum attached hereto, if any.

Seller Signature _A Grable_                    Seller Signature

Print Name Aaron Grable                         Print Name

Date __6:39p.m. 01-29-2024__, 20___

**BUYER'S ACKNOWLEDGEMENT AND ACCEPTANCE OF SELLER'S ACCEPTANCE AND COUNTEROFFER**
(IF APPLICABLE) Buyers hereby acknowledges receipt of a full copy of the Agreement, executed by Seller, and Buyer agrees to accept the amendments and/or addendum proposed by Seller, if any.

Buyer Signature _____, President        Buyer Signature _____, Member

Print Name Creative Audio Solutions LLC         Print Name Creative Audio Solutions LLC

Date _____, 20___

## COMMERCIAL PROPERTY INSPECTION PERIOD RIDER

26817 W 7 Mile Road, Redford, Michigan, 48240

1. **Delivery of Documents by Seller Prior to Closing; Tenant Estoppel Certificates.**

    (a) Immediately after receipt by Seller of a copy of this Agreement, which has been fully and properly executed by Buyer, Seller shall deliver to Buyer copies of a current rent roll for the Property, all leases, licenses or other occupancy agreements, surveys, title insurance policies, engineering feasibility studies, soil tests, topographical drawings and surveys, wetland studies, engineering plans, environmental reports, service contracts, condominium purchase and sale contracts, maintenance agreements, blue prints, site plans, architectural plans, "as built" plans locating all utilities, roads, buildings, structures, parking areas and other improvements located on the Property, permits, licenses, real estate tax bills, information regarding any pending or threatened litigation with respect to the Property, environmental studies, assessments and reports, and all other documents in Seller's possession with respect to the Property or Seller's use thereof, and such other information as may be reasonably requested by Buyer (collectively, the "Documents"), all of which shall automatically and immediately become the sole property of Buyer upon the Closing, or promptly returned by Buyer to Seller in the event this Agreement is terminated by Buyer. Seller will confirm in writing after is has delivered to Buyer all Documents which are in Seller's possession or control.

    (b) As a condition to Buyer's obligation to close, at least five (5) days prior to the date of closing (the "Tenant Estoppel Delivery Date"), Seller shall deliver to Buyer a duly executed original estoppel certificate ("Estoppel Certificate") from each of the tenants/licensees/counterparties under the leases, if any, affecting the Property confirming the term, tenant's possession, current rent and CAM, that there are no defaults or circumstances which may become defaults, amounts owing by Seller for tenant concessions and allowances, and that tenant has no or has waived any option or right to purchase the Property. If any Estoppel Certificate is not delivered to Buyer by the Tenant Estoppel Delivery Date, or if any Estoppel Certificate does not contain the statements required in this paragraph, then Buyer may elect, at its sole option, to (i) waive the condition precedent set forth in this paragraph by written notice to Seller (whereupon such condition will be deemed satisfied) and proceed to the closing, or (ii) terminate this Agreement and upon such termination, the Buyer's earnest money deposit shall be immediately returned to Buyer, and neither party to this Agreement shall have any further obligation, liability or responsibility to each other under this Agreement, except as otherwise expressly provided in this Agreement.

2. **Inspection Period.**

    (a) Buyer shall have the right, until 11:59 p.m. (eastern time) on *[select one]* ☒ Feb,13th,2024 or ❏ that date which is the _____ day following Seller's written confirmation to Buyer that it has delivered to Buyer all of the Documents (the "Inspection Period"), to enter the Property to undertake, at its sole cost and expense, site, engineering, appraisal, soil tests, environmental and such other inspection analyses and studies of the Property as Buyer may desire, and Buyer shall have the right to review the Documents and to take other such actions as Buyer deems necessary to satisfy itself that it wishes to proceed with the purchase of the Property. *[select if applicable]* ❏ Notwithstanding anything to the contrary herein, the Inspection Period shall be extended on a day for day basis for each day until all Documents have been delivered to Buyer. Such investigations may be conducted by Buyer or any designee of Buyer, including, without limitation, engineers, accountants, architects and Buyer's employees, during normal business hours and upon reasonable notice to Seller or Seller' designated agents. Seller shall (i) reasonably cooperate with Buyer in the course of Buyer's investigation, (ii) provide such reasonable documents relating to the operation of the Property as reasonably requested by Buyer that are in Seller' possession or control and (iii) make available to Buyer such persons, agents and representatives of Seller who are involved with the operation, management or maintenance of the Property. Buyer shall indemnify, defend, and hold Seller and Seller' representatives harmless from and against any and all claims, losses, damages, costs and expenses (including reasonable attorneys' fees) to the extent arising from claims of property damage or personal injury caused by the

2122 Michigan Avenue • Detroit, Michigan 48216 • (p) 313-963-9891 • (f) 313-963-9892 • info@oconnordetroit.com



Buyer Initials _____ / Seller Initials _____

acts of Buyer, its employees or agents in connection with such inspections. The preceding sentence shall survive the termination of this Agreement. Buyer must provide Seller with reasonable notice of at least TWENTY-FOUR hours of its intent to conduct an inspection of the Property.

    (b)    If Buyer determines, in its sole discretion, that Buyer does not desire to proceed with the purchase of the Property prior to the expiration of the Inspection Period, then Buyer shall have the right to cancel and terminate this Agreement by providing written notice to Seller on or before the expiration of the Inspection Period, in which case the Deposit shall be immediately returned to Buyer, and neither Seller nor Buyer shall have any further obligation, liability or responsibility to each other under this Agreement, except as otherwise expressly provided in this Agreement. In the event that Buyer fails to deliver written notice to Seller canceling or terminating this Agreement in conformance with this paragraph, the parties shall proceed to closing.

    (c)    Notwithstanding the foregoing, from and after the expiration of the Inspection Period, through the date of the closing, Buyer shall have the right to continue to enter upon the Property for purposes of inspecting the Property and performing any tests or studies it desires. Such inspections, tests or studies shall be conducted during normal business hours upon reasonable notice to Seller.

